No. 22-10575

In the
# United States Court of Appeals
## For the Eleventh Circuit

———————————

GEORGE TERSHAKOVEC ET AL.,
individually and on behalf of all others similarly situated,

*Plaintiffs-Appellees*

v.

FORD MOTOR COMPANY,

*Defendant-Appellant*

———————————

Appeal from the United States District Court for the Southern District of Florida

———————————

**BRIEF OF AMICI CURIAE THE CHAMBER OF COMMERCE
OF THE UNITED STATES OF AMERICA AND
THE AMERICAN TORT REFORM ASSOCIATION
IN SUPPORT OF APPELLANT FORD MOTOR COMPANY**

———————————

Jennifer B. Dickey
Jordan L. Von Bokern
U.S. CHAMBER LITIGATION CENTER
1615 H Street NW
Washington, D.C. 20062

H. Sherman Joyce
Lauren Sheets Jarrell
AMERICAN TORT REFORM ASSOCIATION
1101 Connecticut Ave NW, Suite 400
Washington, D.C. 20036

Brian D. Schmalzbach
MCGUIREWOODS LLP
800 East Canal Street
Richmond, VA 23219
Telephone: (804) 775-4746
bschmalzbach@mcguirewoods.com

*Counsel for Amici Curiae*

**No. 22-10575, *Tershakovec, et al. v. Ford Motor Company, Inc.***

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1, Federal Rules of Appellate Procedure, and 11th Cir. R. 26.1, amici curiae the Chamber of Commerce of the United States of America and the American Tort Reform Association state that, in addition to the persons listed in the Certificate of Interested Persons and Corporate Disclosure Statement filed by Appellant Ford Motor Company on May 11, 2022, the following persons and entities have an interest in the outcome of this case:

American Tort Reform Association, Amicus Curiae

Chamber of Commerce of the United States of America, Amicus Curiae

Dickey, Jennifer B., Counsel for Amicus Curiae the Chamber of Commerce of the United States of America

Jarrell, Lauren Sheets, Counsel for Amicus Curiae the American Tort Reform Association

Joyce, H. Sherman, Counsel for Amicus Curiae the American Tort Reform Association

McGuireWoods LLP, Counsel for Amici Curiae the Chamber of Commerce of the United States of America and the American Tort Reform Association

Schmalzbach, Brian D., Counsel for Amici Curiae the Chamber of Commerce of the United States of America and the American Tort Reform Association

**No. 22-10575, *Tershakovec, et al. v. Ford Motor Company, Inc.***

Von Bokern, Jordan L., Counsel for Amicus Curiae the Chamber of Commerce of the United States of America

Amici curiae the Chamber of Commerce of the United States of America and the American Tort Reform Association further certify that they have no parent companies and that no publicly held company holds a 10% or greater ownership interest.

Dated: May 18, 2022                    Respectfully submitted,

                                                    */s/ Brian D. Schmalzbach*
                                                    Brian D. Schmalzbach

# TABLE OF CONTENTS

**Page**

STATEMENT OF IDENTITY AND INTEREST ....................................................1

STATEMENT OF THE ISSUES....................................................................2

SUMMARY OF THE ARGUMENT ...............................................................2

ARGUMENT AND CITATIONS OF AUTHORITY ...........................................5

I.    The common law and statutory fraud claims require individualized inquiries into reliance, causation, and materiality that predominate over any common questions ...........................................................5

    A.    The fraud-based claims are classically ill-suited for class certification..................................................................................5

    B.    Presumptions of reliance, causation, and materiality are inappropriate for purchases of consumer goods driven by idiosyncratic personal preferences ........................................7

II.   Plaintiffs' California and Texas implied warranty and New York consumer protection claims require individualized proof of manifestation that predominates over any common questions.....................12

    A.    Applicable law requires proof of actual or inevitable manifestation ............................................................................12

    B.    Driver-by-driver manifestation inquiries predominate over any common questions.......................................................14

III.  Loose class certification harms American businesses and the economy as a whole ...................................................................17

CONCLUSION ...................................................................................19

# TABLE OF CITATIONS

**Page(s)**

## Cases

*Ackerman v. Coca-Cola Co.*,
  2013 WL 7044866 (E.D.N.Y. July 18, 2013)......................................................9

*Am. Honda Motor Co. v. Superior Court*,
  132 Cal. Rptr. 3d 91 (Ct. App. 2011) .................................................13

*Am. Honda Motor Co. v. Superior Court*,
  199 Cal. App. 4th 1367 (2011) .............................................................16

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011)...............................................................................18

*In re Avon Anti-Aging Skincare Creams & Prod. Mktg. & Sales Pracs.
  Litig.*,
  2015 WL 5730022 (S.D.N.Y. Sept. 30, 2015) ......................................9

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975) ...............................................................17

*Brown v. Electrolux Home Products, Inc.*,
  817 F.3d 1225 (11th Cir. 2016) ...........................................................12

*Coopers & Lybrand v. Livesay*,
  437 U.S. 463 (1978)...............................................................................18

*Dzieciolowski v. DMAX Ltd.*,
  2016 WL 6237889 (C.D. Cal. Apr. 27, 2016) ......................................16

*Everett v. TK-Taito, L.L.C.*,
  178 S.W.3d 844 (Tex. App. 2005).........................................................13

*Gen. Motors Corp. v. Garza*,
  179 S.W.3d 76 (Tex. App. 2005).............................................13, 14, 16

*Klay v. Humana, Inc.*,
  382 F.3d 1241 (11th Cir. 2004) ...........................................................11

ii

*Klein v. Robert's Am. Gourmet Food, Inc.*,
28 A.D.3d 63, 808 N.Y.S.2d 766 (2006)............................................................10

*McLaughlin v. Am. Tobacco Co.*,
522 F.3d 215 (2d Cir. 2008) ...........................................................................9, 11

*Oscar v. BMW of N. Am., LLC*,
2012 WL 2359964 (S.D.N.Y. June 19, 2012) ....................................................10

*Poulos v. Caesars World, Inc.*,
379 F.3d 654 (9th Cir. 2004) ...............................................................................9

*Rosa v. Am. Water Heater Co.*,
177 F. Supp. 3d 1025 (S.D. Tex. 2016)..............................................................13

*Siqueiros v. Gen. Motors LLC*,
2021 WL 4061708 (N.D. Cal. Sept. 7, 2021).........................................14, 15, 16

*Torres v. S.G.E. Mgmt., L.L.C.*,
838 F.3d 629 (5th Cir. 2016) .............................................................................11

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011).............................................................................3, 12, 17

*Webb v. Carter's Inc.*,
272 F.R.D. 489 (C.D. Cal. 2011).......................................................................16

*Weiner v. Snapple Beverage Corp.*,
2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010)......................................................10

*Wolin v. Jaguar Land Rover N. Am., LLC*,
617 F.3d 1168 (9th Cir. 2010) .....................................................................16, 17

**Rules**

Fed. R. Civ. P. 23(a)(2).........................................................................................2

Fed. R. Civ. P. 23(b)(3).......................................................................................3, 5

**Other Authorities**

2022 Carlton Fields Class Action Survey (2022),
available at https://ClassActionSurvey.com .................................................17, 19

iii

Adeola Adele, *Dukes v. Wal-Mart: Implications for Employment Practices Liability Insurance* (July 2011) ..........................................................18

R. Dahl, *Charlie and the Chocolate Factory* (1964) .................................8

Henry J. Friendly, *Federal Jurisdiction: A General View* (1973)...........................18

McLaughlin on Class Actions (18th ed.) ....................................................7

Order Denying Class Certification, Doc. No. 224,
*Brown v. Electrolux Home Prods., Inc.*,
No. 1:08-cv-30 (S.D. Ga. Jan. 25, 2017) ......................................................13, 15

J. Sternman & J. Garrett, *The Inappropriateness of Applying Presumptions of Reliance to Facilitate Class Certification of Consumer Fraud Actions*,
31 Class Action Reports No. 3 (2010).................................................................7

U.S. Chamber Institute for Legal Reform, *Do Class Actions Benefit Class Members? An Empirical Analysis of Class Actions* (Dec. 2013),
available at http://bit.ly/3rrHd29 .......................................................................18

## STATEMENT OF IDENTITY AND INTEREST[1]

The Chamber of Commerce of the United States of America is the world's largest business federation. The Chamber represents around 300,000 direct members and indirectly represents the interests of more than three million companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files amicus briefs in cases, like this one, that raise issues of concern to the nation's business community.

The American Tort Reform Association (ATRA) is a broad-based coalition of businesses, corporations, municipalities, associations, and professional firms that have pooled their resources to promote reform of the civil justice system with the goal of ensuring fairness, balance, and predictability in civil litigation. For more than three decades, ATRA has filed amicus briefs in cases involving important liability issues.

Amici's members and their subsidiaries include product designers,

---

[1] Counsel for all parties consented to the filing of this brief. No party's counsel authored this brief in whole or in part, and no such counsel nor any party here contributed money to fund the preparation of this brief or its submission. Undersigned counsel of record represents Ford in other proceedings. No person other than amici, their members, or their counsel contributed money to the preparation or submission of this brief.

1

manufacturers, and other businesses that are often targeted as defendants in class actions. Amici thus are familiar with class action litigation, both from the perspective of individual defendants in class actions and from a more global perspective. Amici have a significant interest in this case because the district court's misapplications of state law and Rule 23 raise issues of immense significance not only for their members, but also for the customers, employees, and other businesses that depend on them.

## STATEMENT OF THE ISSUES

Amici agree with Appellant Ford Motor Company's statement of the issues and address these issues in this brief:

1. Did the district court err by certifying consumer protection and common law fraud classes based on presumptions of reliance, materiality, causation and injury, in derogation of the relevant state laws?

2. Did the district court err in certifying warranty claims under California and Texas law, and fraud and consumer protection claims under New York law, when most class members would never experience the alleged defect?

## SUMMARY OF THE ARGUMENT

Rule 23 puts the burden on plaintiffs to prove each of its requirements, including that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). For a damages class, plaintiffs must also show, among other things, that

those common questions "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).

Predominance is a burden of *proof*, not just pleading: "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). That burden often "will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Id.* at 351.

The predominance requirement looms large for consumer class actions like this one. Class counsel have little difficulty coming up with *some* common question, such as whether the powertrain protection or "limp" mode in some Ford Shelby GT350s made them defective. But showing that such a common question *predominates* is—by design—a steeper climb. Certification should be reversed here because classic individual issues associated with consumer class actions predominate over common questions.

*First*, the common law and statutory fraud class claims cannot be certified because each requires proof of reliance (or of related concepts of causation or materiality). That proof in turn requires quintessential predominance-destroying individualized inquiries, which is why Rule 23's own advisory notes have long counseled caution for fraud-based classes. The district court wrongly sought to substitute *presumptions* of reliance, causation, and materiality for those

3

individualized inquiries.  But no such presumption is possible here.  Each of those inquiries requires driver-by-driver investigation into their knowledge of the alleged defect and motivations for buying the GT350.  And there are as many different reasons for buying GT350s as there are GT350s.  So the invented presumptions that all class members relied on certain statements about vehicle attributes (or that those statements caused any loss or were material to any purchasing decision) are pure fiction.

*Second*, no classes can be certified for the other claims (including California and Texas implied warranty claims) requiring proof that the alleged defect manifested.  Those states sensibly exclude customers whose products have performed as advertised and who have thus received the benefit of their bargain.  But the GT350's powertrain protection mode allegedly activates only during certain on-track conditions, which many drivers will never experience.  So these claims require individualized inquiries to root out windfall claims for alleged defects that never manifested.  Those individualized inquiries again swamp any common questions.

## ARGUMENT AND CITATIONS OF AUTHORITY

I.    **The common law and statutory fraud claims require individualized inquiries into reliance, causation, and materiality that predominate over any common questions.**

   A.    **The fraud-based claims are classically ill-suited for class certification.**

In certifying classes for fourteen "common law and statutory fraud claims" (D.231, 26), the district court turned the traditional presumption *against* certification of fraud-based claims on its head.  The court highlighted "Ford's uniform course of conduct" in marketing the GT350 as the most relevant consideration for certification. (*Id.* at 37.)  In the district court's view, that common core of allegations trumped any individualized issues of reliance, causation, or materiality.  (*Id.*)  But that view contradicts Rule 23's own longstanding guidance about the difficulty of certifying fraud-based classes.

The Advisory Committee Notes to the original Rule 23(b)(3) in 1966 show why these classes should never have been certified.  Those notes explain that "although having some common core, a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed.  In these circumstances an action conducted nominally as a class action would degenerate in practice into multiple lawsuits separately tried."

The district court's own summary judgment holdings show that this guidance fits this case perfectly. There was indeed "material variation in the representations made" that led different drivers to have different degrees of knowledge about the GT350's track capabilities. (D.231, 35.) The court held that "[w]hether [Plaintiffs'] knowledge was sufficient to conclude they knew their cars could not complete a Track Day without entering Limp Mode is a jury question." (*Id.*) That jury question would be different based on each driver's knowledge.

Likewise, there were "material variations … in the kinds or degrees of reliance." The district court candidly admitted that variation: "Plaintiffs could have purchased their GT350 for myriad reasons." (*Id.* at 36.) One named Plaintiff, for example, admitted that the powertrain protection mode was irrelevant to him because "because [he] was not going to need a car that required the capability to run for extended periods of time at high speeds." (*Id.*) And even Plaintiffs cited evidence showing that 30 percent of "performance enthusiasts" did not intend "to use their vehicle for road course track days." (*Id.* at 36 n.6.) *See also* Ford Br. 8. So determining reliance (or the related concepts of causation and materiality) would require individualized determinations of each driver's plans and preferences for their vehicles. Those driver-by-driver inquiries mean that this case would inevitably "degenerate in practice into multiple lawsuits separately tried."

6

**B.    Presumptions of reliance, causation, and materiality are inappropriate for purchases of consumer goods driven by idiosyncratic personal preferences.**

The district court tried to obscure those individualized inquiries by fashioning presumptions of reliance, causation, and materiality.  As Ford has shown, blackletter state law does not allow those presumptions here.  Ford Br. 25–36.  And such presumptions are especially inappropriate when applied to claims over consumer products that are bought for as many different reasons as there are different consumers.

"[C]onsumers purchase products or services for a variety of reasons, many of which have little, if any, relationship to price.  This fact alone seriously undercuts any rational extension of the presumption of reliance to facilitate class certification of consumer fraud actions."  J. Sternman & J. Garrett, *The Inappropriateness of Applying Presumptions of Reliance to Facilitate Class Certification of Consumer Fraud Actions*, 31 Class Action Reports No. 3 (2010); *see also* 1 McLaughlin on Class Actions § 5:55 (18th ed.) ("Courts have consistently recognized that consumer markets are diverse and multi-faceted, and thus are not analogous to the highly regulated market for publicly traded securities.").  That is because a buyer for whom an allegedly misrepresented feature has little or no importance would likely buy the product again.  In that case, the buyer did not act in reliance on the misrepresentation, which was neither a cause of the purchase nor material to the buyer.

7

To be sure, a misrepresentation about a product feature may cause particular consumers to buy the product based on that misrepresentation. But that implies nothing about the reasons other consumers bought the same product. Take Wonka Bars: Violet Beauregarde relied on the promised potential for a Golden Ticket when she set aside her gum habit to buy Wonka Bars, but Augustus Gloop's enormous appetite would make him a prodigious consumer of chocolate in any event. *See* R. Dahl, *Charlie and the Chocolate Factory* (1964).

Or consider a smartphone advertised as having the highest-resolution camera in its class. An avid selfie taker who viewed that advertisement and paid a top-shelf price to ensure the most powerful camera may prove reliance, causation, and materiality if that advertisement turns out to be false. But a professional photographer who bought the same phone only for its superior storage ability could not prove those elements. Nor could a rock climber who cared only about the phone's shock resistance. Each buyer's idiosyncratic preferences will determine which features matter and how much. Because reliance, causation, and materiality are functions of those idiosyncratic preferences, one consumer's ability to prove these elements cannot be presumed from another's.

Courts attentive to how those idiosyncratic, individualized preferences shape real-life consumer behavior recognize that presumptions about consumer motivation are unfounded. For example, although alleged misrepresentations about the health

8

qualities of light cigarettes may have made them more attractive to the subset of smokers looking for a healthier alternative, the Second Circuit recognized that other buyers "could have elected to purchase light cigarettes for any number of reasons, including a preference for the taste and a feeling that smoking Lights was 'cool.'" *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 225–26 (2d Cir. 2008); *see also Poulos v. Caesars World, Inc.*, 379 F.3d 654, 665–66 (9th Cir. 2004) ("Gamblers do not share a common universe of knowledge and expectations—one motivation does not 'fit all.' ... Thus, to prove proximate causation *in this case,* an individualized showing of reliance is required.").

Other courts have correctly applied that logic to all sorts of consumer products. *See, e.g.*, *In re Avon Anti-Aging Skincare Creams & Prod. Mktg. & Sales Pracs. Litig.*, 2015 WL 5730022, at *7 (S.D.N.Y. Sept. 30, 2015) (no classwide proof of causation "when many customers 'who actually wanted' the product notwithstanding the misleading act 'were not injured'" because "[j]ust as beauty is in the eye of the beholder, purchasing decisions like this one are 'inherently individualized'"); *Ackerman v. Coca-Cola Co.*, 2013 WL 7044866, at *20 n.30 (E.D.N.Y. July 18, 2013) ("[V]itaminwater has a number of characteristics that customers might value, and to differing degrees. There is simply no way—without inquiring on a customer-by-customer basis—to determine whether the name 'vitaminwater' (or one of the other complained-of statements) affected the purchase

9

price paid by each putative class member."); *Weiner v. Snapple Beverage Corp.*, 2010 WL 3119452, at *11 (S.D.N.Y. Aug. 5, 2010) ("[C]onsumers may have purchased Snapple beverages for many reasons other than the 'All Natural' label, including their taste, glass bottles, quirky advertising, or even the 'Snapple Facts.' Individualized inquiries would therefore be required to determine whether putative class members purchased Snapple beverages in reliance upon the 'All Natural' label, as opposed to other considerations."); *Klein v. Robert's Am. Gourmet Food, Inc.*, 28 A.D.3d 63, 71, 808 N.Y.S.2d 766, 773 (2006) ("Of all the persons in the nation who purchased the [snack foods] over that nearly four-year period, there were certainly some, and perhaps many, who did so for reasons wholly unrelated to the Products' advertised fat and caloric content. Those individuals would not have suffered any injury as a result of the defendants' alleged misrepresentations.").

Because automobiles are particularly rich in features valued differently by different drivers, presumptions about reliance, causation, and materiality are especially perilous. *See, e.g.*, *Oscar v. BMW of N. Am., LLC*, 2012 WL 2359964, at *4–5 (S.D.N.Y. June 19, 2012) ("For some consumers, the [run-flat tires] may have been an important factor; for others, not at all; for others, somewhere in between; and others, perhaps most others, may never have thought to isolate the relative contribution of each of the differences between [models]."). Indeed, the district court admitted as much when it recognized that "Plaintiffs could have purchased

their GT350 for myriad reasons." (D.231, 36.) And the class-certification record bore out that different drivers had wildly different reasons for buying their vehicles. (*Id.* at 11–12.)

The district court mistakenly relied on *Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004), to fashion a presumption despite that stark heterogeneity in GT350 consumer motivations. But *Klay* is not a case about consumer products at all. Instead, it addressed "a financial transaction" that "does not usually implicate the same type or degree of personal idiosyncratic choice as does a consumer purchase." *McLaughlin*, 522 F.3d at 225 n.7; *see also* Ford Br. 23–24. The Second Circuit correctly distinguished *Klay* for that reason: "assuming that most individuals are led to believe that they will get paid when they sign a contract calling for payment is very different from assuming that most individuals purchase a consumer good in reliance upon an inference that they draw from its marketing and branding rather than for some other reason." *Id.*; *see also Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629, 643 n.62 (5th Cir. 2016) (en banc) (distinguishing a financial class action over a pyramid scheme from "misrepresentations involving consumer purchases in which courts have rejected an inference of reliance"). *Klay* thus provides no support for the inappropriate presumptions that underlay certification of the fraud-based classes here.

II.    **Plaintiffs' California and Texas implied warranty and New York consumer protection claims require individualized proof of manifestation that predominates over any common questions.**

The district court also erred in certifying classes for claims that require evidence of manifestation because that individualized inquiry predominates over any common questions.  In *Brown v. Electrolux Home Products, Inc.*, this Court left open whether "California and Texas law require the defect to manifest" for implied warranty claims.  817 F.3d 1225, 1238 (11th Cir. 2016).  But this Court recognized that if that manifestation is required, then "each class member will need to prove" it.  *Id.*[2]  Because claims under California and Texas implied warranty law and New York's consumer protection act require that individualized evidence, no common question predominates for those causes of action.

A.    **Applicable law requires proof of actual or inevitable manifestation.**

Each of those claims requires proof that the claimant has experienced or will experience a manifestation of the alleged defect.   The district court correctly recognized at the motion-to-dismiss stage that "in Texas, it must be 'inevitable' that

---

[2] As Ford notes, the district court's failure even to consider those manifestation requirements in its predominance analysis repeats the same error for which this Court reversed class certification in *Brown*.  Ford Br. 37.  Indeed, when the district court analyzed state manifestation requirements for purposes of Ford's motions to dismiss, it concluded that "may be an issue better addressed at class certification." (D.66, 18).  But the district court did not address that issue then.  *No* analysis cannot be "rigorous analysis."  *Dukes*, 564 U.S. at 351.

the alleged defect will manifest itself." (D.66, 17 (quoting *Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 855 (Tex. App. 2005)). California law imposes the same requirement for implied warranty claims. *See Am. Honda Motor Co. v. Superior Court*, 132 Cal. Rptr. 3d 91, 97–98 (Ct. App. 2011) (manifestation must be "substantially certain to result in malfunction during [the product's] useful life"). Indeed, the district court confirmed on remand in *Brown* that "California and Texas law in fact require near-certain manifestation." Order Denying Class Certification at 6, Doc. No. 224, *Brown v. Electrolux Home Prods., Inc.*, No. 1:08-cv-30 (S.D. Ga. Jan. 25, 2017). And, as Ford explains, claims under New York's consumer protection act impose that same requirement. Ford Br. 38–39.

That manifestation requirement is a common-sense requirement of liability for claims over products, like "cars," that "have a distinctly limited usable life." *Rosa v. Am. Water Heater Co.*, 177 F. Supp. 3d 1025, 1051 (S.D. Tex. 2016). No state's law requires manufacturers to warrant that a product will last forever, nor does any reasonable consumer expect as much. But "[a]t the end of the product's life, the product and whatever defect it may have had pass away." *Id.* So "[i]f a defect does not manifest itself in that time span, the buyer has gotten what he bargained for." *Id.*; *see also Gen. Motors Corp. v. Garza*, 179 S.W.3d 76, 83 (Tex. App. 2005) ("For purchasers who never experienced a problem during the time they owned the car, they got what they paid for."). Excusing the manifestation

13

requirement here, by contrast, would create a windfall for consumers who received GT350s that have performed as expected.

### B. Driver-by-driver manifestation inquiries predominate over any common questions.

That substantive element of applicable law requires individualized proof that *each class member* experienced the alleged defect or inevitably would experience it. At class certification, Plaintiffs contend only that the alleged defect manifests during "sustained track driving." 23(f) Answer 1; (D.231, 3.)[3] But *not* all GT350 owners use their vehicles on the track, let alone in the sort of sustained track driving characteristic of Ford "Track Day" events that allegedly causes the defect to manifest. (D.180-30, 48–51.) So individual inquiries will be necessary to determine whether each class member experienced powertrain protection or "limp" mode or, under Plaintiffs' theory, intended to drive the GT350 under conditions that would inevitably cause the alleged defect to manifest. That driver-by-driver inquiry into manifestation defeats the predominance requirement. *See, e.g.*, *Garza*, 179 S.W.3d at 82 (reversing certification of a Texas implied warranty class because "individual questioning would be necessary to determine whether these owners actually experienced" the alleged defect); *Siqueiros v. Gen. Motors LLC*, 2021 WL 4061708,

---

[3] A minority of Plaintiffs originally alleged that "they experienced Limp Mode on public highways." (D.66, 12.) But the district court granted summary judgment to Ford on that theory. (D.231, 13–15.)

at *1, 7 (N.D. Cal. Sept. 7, 2021) (decertifying a Texas implied warranty class under "the manifest-defect rule in Texas" because the alleged defect "did not disrupt the operation of all the Texas class members' vehicles"); *see also Brown*, Order Denying Class Certification 7 (denying certification of California and Texas claims because "Plaintiffs have not shown that [the alleged defects] are highly likely to manifest throughout their proposed classes").

Even if Plaintiffs could show that "Limp Mode is a virtual certainty" for *some* class members (D.231, 18), that would not suffice to prove that the defect is virtually certain to manifest for *each* class member. The motion-to-dismiss opinion shows why. There, the district court evaluated the individualized allegations of Kamperman and Alley, two Plaintiffs "who did not experience Limp Mode." (D.66, 17). Yet the court credited their allegation that they "would inevitably have encountered Limp Mode had they attempted to use their vehicles on a track *as [they] intended to do upon purchase*." *Id.* (emphasis added); *see also id.* (relying on allegations that after learning about Limp Mode, Kamperman "'decided not to take his Shelby to the track'" and Alley "'cancelled his pre-existing reservation to participate in a track day'").

But Plaintiffs offer no classwide proof that *all* GT350 drivers shared Messrs. Kamperman and Alley's intent to participate in Track Days. To the contrary, it is undisputed that many drivers never had such plans for their vehicles. Thus,

15

determining for which drivers the alleged defect would be virtually certain to manifest (even on Plaintiffs' theory) would require predominance-destroying "individual questioning" and "credibility assessments." *Garza*, 179 S.W.3d at 82.

Plaintiffs (but not the district court) invoke Ninth Circuit law to try to circumvent the need for individualized proof of manifestation. 23(f) Answer 19–20 (citing *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1173 (9th Cir. 2010)). But the Ninth Circuit's decision in *Wolin* is no substitute for the necessary individualized proof of manifestation.

Plaintiffs wrongly suggest that *Wolin* excuses the manifest-defect rule in all cases of alleged design defects. 23(f) Answer 19. For starters, "*Wolin* does not address California law" (nor Texas or New York law). *Am. Honda Motor Co. v. Superior Court*, 199 Cal. App. 4th 1367, 1375 (2011). As explained above, the manifest-defect rule is a core feature of those states' law. Courts in the Ninth Circuit thus correctly recognize that individualized proof of manifestation defeats predominance. *See, e.g.*, *Siqueiros v. Gen. Motors LLC*, 2021 WL 4061708, at *1; *Dzieciolowski v. DMAX Ltd.*, 2016 WL 6237889, at *4 (C.D. Cal. Apr. 27, 2016). At most, *Wolin* recognized one specific tire alignment defect that would make premature tire wear inevitable regardless of individual driving preferences and practices. *Webb v. Carter's Inc.*, 272 F.R.D. 489, 498 (C.D. Cal. 2011). Even

16

assuming *Wolin* was correctly decided, it provides no cover for the individualized manifestation issues here.

To the extent *Wolin* holds that the manifestation inquiry applies only "on the merits" and "does not overlap with the predominance test," 617 F.3d at 1173, it is bad law.  As the Supreme Court has since clarified, often the necessary "'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). In fact, the Supreme Court expressly repudiated the misinterpretation of earlier precedent on which *Wolin* was built.  *Id.* at 351 n.6; *see also* 617 F.3d at 1173 (citing *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975) (in turn adopting the repudiated interpretation that the Rule 23 "determination does not permit or require a preliminary inquiry into the merits")).  So *Wolin* is unpersuasive and inapplicable in equal measure.

## III.    Loose class certification harms American businesses and the economy as a whole.

The rigorous analysis required by Rule 23 is sorely needed to combat the substantial harms that burdensome class action litigation imposes on the business community and the public.  Class action litigation costs in the United States are enormous and growing.  In 2021, those costs surged to $3.37 billion, accelerating a trend of rising costs that began in 2015.  *See* 2022 Carlton Fields Class Action Survey, at 4–6 (2022), available at https://ClassActionSurvey.com.  Defending *even*

17

*one* class action can cost a business nine figures.  *See, e.g.*, Adeola Adele, *Dukes v. Wal-Mart: Implications for Employment Practices Liability Insurance* 1 (July 2011). And those class actions can persist for years with no resolution of class certification—let alone the dispute as a whole.  See U.S. Chamber Institute for Legal Reform, *Do Class Actions Benefit Class Members? An Empirical Analysis of Class Actions*, at 1, 5 (Dec. 2013), available at http://bit.ly/3rrHd29 ("Approximately 14 percent of all class action cases remained pending four years after they were filed, without resolution or even a determination of whether the case could go forward on a class-wide basis.").

The extraordinary exposure opened up by certification also creates immense pressure on defendants to settle even cases that deserve a resolution on the merits. Judge Friendly aptly called these "blackmail settlements."  Henry J. Friendly, *Federal Jurisdiction: A General View* 120 (1973).  As the Supreme Court explained, "Certification of a large class may so increase the defendant's potential damages liability and litigation costs that he may find it economically prudent to settle and to abandon a meritorious defense."  *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 476 (1978); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350 (2011) (noting "the risk of 'in terrorem' settlements that class actions entail").  Those settlement pressures are only growing with time, as companies settled 73.1% of class

actions in 2021—even more than the 58.5% and 60.3% in the previous two years. *See* 2022 Carlton Fields Class Action Survey 26.

If not reversed, the decision below will exacerbate those disturbing trends. Circumventing the requirements of state law to grease the skids for class certification makes it harder for businesses to present their defenses—as due process entitles all parties to do. And compromising companies' ability to rebut claims on an individualized basis will only ratchet up the coercive settlement pressure. So the lax analysis exemplified below will harm the entire economy because the costs of defending and settling abusive class actions are ultimately absorbed by manufacturers' other consumers and their employees through higher prices or lower wages.

## CONCLUSION

The Court should reverse the grant of class certification.

Dated: May 18, 2022          Respectfully submitted,

                           */s/ Brian D. Schmalzbach*

Brian D. Schmalzbach

MCGUIREWOODS LLP

Gateway Plaza

800 East Canal Street

Richmond, VA 23219

Telephone: (804) 775-4746

bschmalzbach@mcguirewoods.com

Jennifer B. Dickey

Jordan L. Von Bokern

U.S. CHAMBER LITIGATION CENTER

1615 H Street NW

Washington, D.C. 20062

Telephone: (202) 463-5337

H. Sherman Joyce

Lauren Sheets Jarrell

AMERICAN TORT REFORM ASSOCIATION

1101 Connecticut Ave NW

Suite 400

Washington, D.C. 20036

Telephone: (202) 682-1167

*Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) because it contains 4,244 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.      This brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it has been prepared in proportionally spaced Times New Roman typeface using Microsoft Word, in 14-point size.


*/s/ Brian D. Schmalzbach*
Brian D. Schmalzbach

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2022 the foregoing was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit using the CM/ECF system. All participants in the case are registered CM/ECF users and will be served by the system.


*/s/ Brian D. Schmalzbach*
Brian D. Schmalzbach